UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | | |
|---|---|---|
| CHRIS BROOKS, | ) | CIV. 12-5003-KES |
| FRANCIS RENCOUNTRE, | ) | |
| GLORIA RED EAGLE, | ) | |
| SHARON CONDEN, | ) | |
| JACQUELINE GARNIER, | ) | |
| JENNIFER RED OWL, | ) | |
| EDWINA WESTON, | ) | |
| MICHELLE WESTON, | ) | |
| MONETTE TWO EAGLE, | ) | ORDER DENYING |
| MARK A. MESTETH, | ) | DEFENDANT GANT'S |
| STACY TWO LANCE, | ) | MOTION TO DISMISS |
| HARRY BROWN, | ) | |
| ELEANOR WESTON, | ) | |
| DAWN BLACK BULL, | ) | |
| CLARICE MESTETH, | ) | |
| DONOVAN L. STEELE, | ) | |
| EILEEN JANIS, | ) | |
| LEONA LITTLE HAWK, | ) | |
| EVAN RENCOUNTRE, | ) | |
| CECIL LITTLE HAWK, SR., | ) | |
| LINDA RED CLOUD, | ) | |
| LORETTA LITTLE HAWK, | ) | |
| FAITH TWO EAGLE, | ) | |
| EDMOND MESTETH, and | ) | |
| ELMER KILLS BACK, JR., | ) | |
| | ) | |
|       Plaintiffs, | ) | |
| | ) | |
|   vs. | ) | |
| | ) | |
| JASON GANT, in his official capacity as | ) | |
| South Dakota Secretary of State, | ) | |
| SHANNON COUNTY, SOUTH DAKOTA, | ) | |
| FALL RIVER COUNTY, SOUTH DAKOTA, | ) | |
| SHANNON COUNTY BOARD OF | ) | |
| COMMISSIONERS, | ) | |
| FALL RIVER COUNTY BOARD OF | ) | |
| COMMISSIONERS, | ) | |
| JOE FALKENBUERG, in his official | ) | |
| capacity as a member of the County Board | ) | |
| of Commissioners for Fall River County, | ) | |
| South Dakota, | ) | |
| ANNE CASSENS, in her official capacity as | ) | |
| a member of the County Board of | ) | |
| Commissioners for Fall River County, | ) | |
| South Dakota, | ) | |
| MICHAEL P. ORTNER, in his official | ) | |
| capacity as a member of the County Board | ) | |

Case 5:12-cv-05003-KES   Document 95   Filed 09/27/12   Page 2 of 20 PageID #: 2000

| | |
|---|---|
| of Commissioners for Fall River County, South Dakota, | ) ) |
| DEB RUSSELL, in her official capacity as a member of the County Board of Commissioners for Fall River County, South Dakota, | ) ) ) ) |
| JOE ALLEN, in his official capacity as a member of the County Board of Commissioners for Fall River County, South Dakota, | ) ) ) ) |
| BRYAN J. KEHN, in his official capacity as a member of the County Board of Commissioners for Shannon County, South Dakota, | ) ) ) ) |
| DELORIS HAGMAN, in her official capacity as a member of the County Board of Commissioners for Shannon County, South Dakota, | ) ) ) ) |
| EUGENIO B. WHITE HAWK, in his official capacity as a member of the County Board of Commissioners for Shannon County, South Dakota, | ) ) ) ) |
| WENDELL YELLOW BULL, in his official capacity as a member of the County Board of Commissioners for Shannon County, South Dakota, | ) ) ) ) |
| LYLA HUTCHISON, in her official capacity as a member of the County Board of Commissioners for Shannon County, South Dakota, | ) ) ) ) |
| SUE GANJE, in her official capacity as the County Auditor for Shannon and Fall River Counties, and | ) ) ) ) |
| JAMES SWORD, in his official capacity as Attorney for Shannon and Fall River Counties, | ) ) ) |
| | ) |
|         Defendants. | ) |

      Plaintiffs brought this cause of action for declaratory relief and for a temporary and permanent injunction that would require defendants to provide the full period of statutorily authorized early voting in Shannon County. Docket 1. Plaintiffs claim that defendants' failure to establish early, in-person voting locations within the boundaries of Shannon County similar to what exist

in almost every other county and for every other voter in South Dakota violates the Voting Rights Act, the South Dakota Constitution, and the Equal Protection Clause. Defendant Jason Gant, in his official capacity as South Dakota Secretary of State, moves that he be dismissed from this cause of action because he has Eleventh Amendment immunity, plaintiffs cannot establish standing, and they have failed to state a claim upon which relief can be granted. Docket 43. Plaintiffs contest this motion and claim that there is a sufficient connection between the Secretary of State and voting to deny Gant's motion to dismiss, that standing and sovereign immunity do not provide grounds for dismissal, and that they have succeeded in stating a claim upon which relief can be granted. Docket 47.

## BACKGROUND

Plaintiffs are enrolled members of the Oglala Sioux Tribe who reside in Shannon County and are registered to vote. Docket 1 ¶¶ 10-34. Defendant Jason Gant is the duly elected Secretary of State for the state of South Dakota. Shannon County is entirely within the boundaries of the Pine Ridge Indian Reservation. Docket 1 ¶ 1. Shannon County contracts for certain services like the conduction of elections through an adjacent county, Fall River County. Docket 1 ¶ 61.

What is called early voting is absentee voting that is done in person. Docket 1 ¶ 63. Most voters in South Dakota can exercise their right to vote prior to election day at their county courthouse. Docket 1 ¶ 63. Shannon County does not have a courthouse. Its registered voters can vote early in person at the Fall River County courthouse. In the past, Shannon County has

offered some days of early voting at locations within Shannon County itself, but never for the full statutorily authorized time period. Docket 1 ¶ 63. In 2012, Shannon County planned to offer six days of early voting at a location within Shannon County, but any other early voting had to be done in Fall River County. Docket 1 ¶ 102. The auditor's office in Fall River County is located in Hot Springs, which is between 53 minutes and 2 hours and 45 minutes from voters in Shannon County depending on the residence of the voter. Docket 1 ¶ 63. The voters in the other counties in South Dakota are able to vote early, in person, at a location within their county, for the entire time period set by statute. Docket 1 ¶ 63.

On January 13, 2012, plaintiffs filed this cause of action pursuant to Sections 2, 5, and 12(d) of the Voting Rights Act of 1965, the Indian Citizenship Act, 42 U.S.C. § 1983, 28 U.S.C. § 2201-2202 for declaratory relief, and Article II, Section 1 of the South Dakota Constitution. Docket 1. On February 14, 2012, Gant moved to dismiss himself as a party to this suit. Docket 43.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) provides that a court may dismiss an action for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). It is a rule " 'rooted in the unique nature of the jurisdictional question.' " *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). Under a motion to dismiss based on lack of subject matter jurisdiction, the defendant may challenge either the plaintiff's complaint on its face or based on the factual truthfulness of the claims. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993); *Osborn v. United*

*States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). The plaintiff carries the burden of showing that jurisdiction exists. *V S Ltd. P'ship v. Dep't of Hous. & Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000) (citation omitted). "A motion to dismiss for lack of jurisdiction under rule 12(b)(1) which is limited to a facial attack on the pleadings is subject to the same standard as a motion brought under Rule 12(b)(6)." *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 698 (8th Cir. 2003) (citation omitted).

  When reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court assumes that all facts in the complaint are true and construes any reasonable inferences from those facts in the light most favorable to the plaintiff. *Schaaf v. Residential Funding Corp.,* 517 F.3d 544, 549 (8th Cir. 2008). To decide the motion to dismiss under Rule 12(b)(6), the court may consider the complaint, some materials that are part of the public record, or materials embraced by the complaint. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). To survive the motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The factual content in the complaint must "allo[w] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Braden v. Wal-Mart Stores*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)).

**DISCUSSION**

**I.    Standing**[1]

Gant argues that plaintiffs cannot show an imminent or particularized injury or that there is a connection between his conduct and their harm. Gant also claims that because he does not have the authority to establish early voting in Shannon County, plaintiffs' injury is not traceable to his conduct. Plaintiffs respond that their potential harm is substantial because the fundamental right to vote should be zealously guarded and without a court order requiring defendants to grant plaintiffs access to early voting, plaintiffs could be denied that right based on their race. Plaintiffs also allege that Gant is the chief elections officer in South Dakota with the statutory power to conduct county elections in an emergency and the elected official responsible for distributing federally given HAVA funds, thus, his position and conduct are related to their alleged harm.

" 'Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto.' " *Gray v. City of Valley Park, Mo.*, 567

---

[1] "[I]f a plaintiff lacks standing, [a] district court has no subject matter jurisdiction. Therefore, a standing argument implicates Rule 12(b)(1)." *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 801 (8th Cir. 2002). Because the arguments of standing and sovereign immunity affect the court's jurisdiction and, therefore, its ability to hear the case, those claims will be analyzed first. *N. Valley Commc'ns, LLC v. Qwest Commc'ns Corp.*, 711 F. Supp. 2d 1018, 1024 (D.S.D. 2010) (stating that when a party moves to dismiss under 12(b)(1) and other grounds, "the court should consider the Rule 12(b)(1) challenge first since if it must dismiss [a claim] for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined.").

F.3d 976, 982-83 (8th Cir. 2009) (quoting *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)). Article III requires that there be a case or controversy at every stage of the litigation, and " '[f]ederal courts must always satisfy themselves that this requirement has been met before reaching the merits of a case.' " *Id.* (quoting *Schanou v. Lancaster Cnty. Sch. Dist. No. 160*, 62 F.3d 1040, 1042 (8th Cir. 1995)).

"Standing requires (1) an injury that is concrete and particularized and actual or imminent, not conjectural or hypothetical, (2) that the injury be fairly traceable to the challenged action of the defendant, and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Turkish Coal. of Am., Inc. v. Bruininks*, 678 F.3d 617, 621 (8th Cir. 2012) (quotations and citation omitted). It is insufficient to show an injury in fact by mere "[a]llegations of possible future injury." *Mo. Roundtable for Life v. Carnahan*, 676 F.3d 665, 672 (8th Cir. 2012) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

Plaintiffs are Native American voters[2] living within Shannon County who allege that they themselves have been denied their fundamental right to vote. Specifically, plaintiffs have stated that they suffered an injury in fact because they are denied the fundamental right to vote early within their county, which has an overwhelming population of Native Americans, when almost all other

---

[2] The Supreme Court has held that when a governmental actor is discriminating based on race, that resulting injury "accords a basis for standing only to those persons who are personally denied equal treatment by the challenged discriminatory conduct." *United States v. Hays*, 515 U.S. 737, 743-44 (1995) (quotations and citations omitted).

white voters in South Dakota's counties are afforded early voting rights within their own counties. At this stage in the litigation, plaintiffs' alleged injury is sufficiently particularized and concrete and is not speculative or imaginary; thus, the first factor of standing is satisfied. *See Constitution Party of S.D. v. Nelson*, 639 F.3d 417, 421 (8th Cir. 2011) ("Therefore 'general factual allegations of injury resulting from the defendant's conduct' will suffice to establish Article III standing at the pleading stage, 'for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support [a contested] claim.' ").

Plaintiffs' alleged injury, their lack of early voting, is fairly traceable to Gant at this stage of the litigation. Gant is the chief election officer in the state of South Dakota. If for some reason an emergency occurs in Shannon County and the person in charge of conducting the election cannot or will not do so, Gant may run the election. SDCL 12-18-41. In December of 2009, Fall River County and Shannon County State's Attorney, Jim Sword, threatened that he and Sue Ganje, the county auditor for Fall River and Shannon Counties, would resign and then the "DOJ, the State of South Dakota and the tribe can argue about who is going to run the 2010 elections." Docket 1 ¶¶ 82-83. Considering the fact that Shannon County contracts with Fall River County for its election assistance and Fall River County has threatened to terminate such services in the recent past, Gant may be responsible pursuant to state law to coordinate an election in Shannon County.[3] This provides a nexus between the alleged

---

[3] Although the parties were fighting about multiple issues when this letter was drafted and sent, it shows that Gant may have to step in and provide early voting in Shannon County.

harm and Gant. *See Mo. Prot. & Advocacy Servs., Inc. v. Carnahan*, 499 F.3d 803, 807 (8th Cir. 2007) (noting that although authority to administer elections is typically delegated to local authorities, "the Secretary of State is 'the chief state election official' responsible for overseeing of the voter registration process" and he or she administers the federal Help America Vote Act of 2002 and the National Voter Registration Act of 1993).

Moreover, Gant is the officer in charge of disseminating Help America Vote Act of 2002 (HAVA) funds in South Dakota, and he has authority to implement South Dakota's plan to improve the administration of federal elections under HAVA. *See* Help America Vote Act of 2002, Pub. L. 107-252, 42 U.S.C. § 15301 *et seq.* The Election Assistance Commission distributes HAVA funds to the states, but there is no federal mandate as to how the local units of government, like counties, actually have to receive the funds from the state. Docket 47 at 11. At the time this lawsuit was brought it was the practice and preference[4] of the state of South Dakota to have counties pay election costs up front and then submit the costs to the state as a reimbursement request.[5] When additional HAVA funds are made available to the state, the Secretary of

---

[4] At the time of the complaint, Gant had not agreed to provide additional funding to Shannon County from HAVA funds, but instead had only indicated a willingness to consider reimbursement requests after voting concluded. Docket 1 ¶ 103.

[5] The plan notes that counties must expend all of the monies held in their county-held accounts before they can request state-held funds. "Counties are reimbursed semi-annually from the state election fund." Docket 48-14 at 4. Further, "[r]eimbursement requests will be submitted to the Secretary of State's office via the HAVA Title II Reimbursement Form." Docket 48-14 at 9.

State has discretion to determine how the funds are distributed to counties.[6] This discretion on how to provide federal funds to counties like Shannon County and Gant's power to implement the state's HAVA plan is sufficient to show an additional avenue through which plaintiffs' injury in fact is traceable to Gant's conduct.

Finally, plaintiffs' injury is able to be redressed because plaintiffs are seeking a court order to direct that defendants provide early voting, and all defendants, including Gant, would have to comply with that order and offer early voting in Shannon County. The court also could order that defendant Gant, in particular, alter the state's HAVA reimbursement plan if the court were to determine that the current reimbursement plan was violative of the Voting Rights Act or other federal law. Under the facts alleged in the complaint, there is a cognizable connection between Gant's conduct, the harm to plaintiffs, and the court's ability to redress the harm.

## II. Eleventh Amendment Sovereign Immunity[7]

Gant argues that plaintiffs' claims against him cannot proceed because he is shielded by sovereign immunity under the Eleventh Amendment. Plaintiffs assert that because their requested remedy is against Gant for prospective injunctive relief, this action may proceed under *Ex parte Young*,

---

[6] The state HAVA plan provides that "[i]f further Title II Section 251 funds are made available to the State, the Secretary of State will determine an appropriate method for funds distribution." Docket 48-14 at 5.

[7] A motion to dismiss based on sovereign immunity is a challenge to the court's subject matter jurisdiction; therefore, this claim is also guided by Federal Rule of Civil Procedure 12(b)(1).

because a state actor is not protected by sovereign immunity if he is engaging in an ongoing violation of an individual's federally protected right.

The Eleventh Amendment, or the doctrine of sovereign immunity, deprives federal courts of the power to hear claims brought by parties against states, their agencies, or their officers, unless the state has waived its immunity or Congress has abrogated the state's immunity. U.S. Const. amend. XI; *Quinnett v. Iowa*, 644 F.3d 630, 632 (8th Cir. 2011). But when prospective relief is sought against individual state officers in their official capacity in federal court based on a deprivation of a federal right, the Eleventh Amendment typically does not bar that action. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 276-77 (1997); *see also S.D. Farm Bureau, Inc. v. South Dakota*, 197 F.R.D. 673, 679 (D.S.D. 2000) ("Sovereign immunity does not bar certain actions against state officers for injunctive or declaratory relief to prevent future violations of federal law by state officials."). This exception initially addressed in *Ex parte Young* provides that "if a state official violates federal law, he is stripped of his official or representative character and may be personally liable for his conduct; the State cannot cloak the officer in its sovereign immunity." *Coeur d'Alene*, 521 U.S. at 288 (O'Connor, J., concurring) (citing *Ex parte Young*, 209 U.S. 123, 159-60 (1908)).

When applying the *Ex parte Young* doctrine, a court "need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.' " *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Coeur d'Alene*, 521 U.S. at 296). "[T]he proper focus [of our immunity

11

inquiry] must be directed at whether the injunctive relief sought is prospective or retroactive in nature, and not on an injunction's impact on the State's treasury." *Mo. Child Care Ass'n v. Cross*, 294 F.3d 1034, 1042 (8th Cir. 2002) (quotations and citations omitted).

In this case, plaintiffs' requested relief is against defendant Gant in the future and is not a request for money damages. Plaintiffs have alleged that the lack of in-county early voting for Native Americans living in Shannon County is an issue that has not been resolved previously and remains uncertain going forward. Plaintiffs' request, therefore, is not to fix a past wrong, but is a request that all defendants, including Gant, provide in-county, in-person, early voting for every election cycle in the future and for the full statutorily set time period. As analyzed in the standing discussion, Gant's authority to conduct elections in an emergency, his role as the chief elections official in the state, and his control of federal HAVA funds that are distributed by him to counties like Shannon County provides his connection to this claim.

If the court finds that Gant's HAVA plan violates federal law, it could order Gant to change his policies to avoid violating federal law in the future. This is the type of relief that is prospective in nature because it is a request for a state official[8] to stop violating federal law, which is precisely the type of case where the *Ex parte Young* doctrine applies. *See Va. Office for Prot. & Advocacy v.*

---

[8] Gant also argues that the claim against him is really against the state of South Dakota. But the Supreme Court has held that "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the state.' " *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989).

*Stewart*, 131 S. Ct. 1632, 1639 (2011) (" 'In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.' "). For this reason, Gant is not cloaked with sovereign immunity, and he is a proper defendant in this case.

### III. Failure to State a Claim

Plaintiffs claim that Gant violated the Voting Rights Act because they were denied the right to vote based on their race due to a standard, practice, or procedure imposed by Gant. Plaintiffs also argue that Gant acted under color of state law to deprive the voters of Shannon County equal protection of the laws by failing to establish early voting in violation of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983. Finally, plaintiffs allege that Gant acted under the color of state law to deprive them of their voting rights and equal elections in violation of the South Dakota Constitution. Gant asserts that plaintiffs have failed to state a claim upon which relief can be granted on all three of their claims.

#### A. Voting Rights Act

Section 2 of the Voting Rights Act prohibits states from applying or imposing any "standard, practice, or procedure . . . which results in a denial or abridgment of the right of any citizen of the United States to vote on account of race or color[.]" 42 U.S.C. § 1973(a). Section 2 of the Voting Rights Act is violated if, based on the totality of the circumstances, minority plaintiffs can show that they "have less opportunity than other members of the electorate to

13

participate in the political process and to elect representatives of their choice." 42 U.S.C. § 1973(b); *see also Chisom v. Roemer*, 501 U.S. 380, 397 (1991).

The thrust of Gant's argument that plaintiffs have failed to state a claim is that because early voting is the responsibility of Shannon County, he could not have violated federal or state law because he does not have the capacity to establish early voting in Shannon County. In South Dakota, the precincts and polling places are designated by county commissioners. SDCL 12-14-1. Each county's auditor is the party responsible for providing ballots for each election in the county. SDCL 12-16-1. While it is true that Shannon County is the entity that has to provide early voting to plaintiffs, the Secretary of State may conduct an election in any county if the person in charge of elections in that county signs a declaration of emergency.[9]

Gant argues that he must be dismissed because any alleged wrongdoing in Shannon County would be the fault or responsibility of the county auditor or the local election officials. Secretary of State Gant, however, is a proper party in the lawsuit at this stage of the litigation because he is the chief elections official

---

[9] SDCL 12-18-41 provides:

Procedure for secretary of state to conduct election in emergency–Reimbursement of expenses. If the person charged with the conduct of an election and the governing board determine that an election cannot be conducted, the person charged with the conduct of an election shall sign a declaration of emergency and deliver it to the secretary of state prior to the election. The secretary of state may conduct the election for that county or political subdivision until the election has been certified. Any reasonable and necessary expenses incurred by the secretary of state to conduct the election shall be reimbursed by the county or political subdivision within ninety days after the election has been certified.

in the state and because he has the authority to conduct an election in South Dakota when there is a "declaration of emergency" signed and delivered to him by the person tasked with conducting the local election. Such a connection is direct enough to survive on a motion to dismiss and to state a claim against Gant in general.[10] Additionally, the Supreme Court emphasized in *Chisom v. Roemer*, 501 U.S. 380 (1991) that "the [Voting Rights Act of 1965] should be interpreted in a manner that provides the 'broadest possible scope' in combating racial discrimination." *Id.* at 403 (quoting *Allen v. State Bd. of Elections*, 393 U.S. 544, 567 (1969)).

In the amended complaint, plaintiffs alleged that each of them are enrolled members of the Oglala Sioux Tribe, registered voters, and residents of Shannon County. Docket 1 ¶¶ 10-34. South Dakota law states that absentee voting "shall begin no earlier and no later than forty-six days prior to the election." SDCL 12-16-1. Plaintiffs provided evidence that voters in other counties in South Dakota could go to their county courthouse and obtain and cast an absentee ballot in one trip for the full statutorily set window leading up to an election. Docket 1 ¶ 63. Plaintiffs have also established that the same is not true for them as voters in Shannon County.

---

[10] *See Am. Broad. Cos., Inc. v. Ritchie*, Civ. No. 08-5285, 2011 WL 665858, at *3 (D. Minn. Feb. 14, 2011) (noting that the Secretary of State was the proper party to the lawsuit because he was the "chief election official in the state" and had a duty to implement any injunctions regarding state election laws); *Carnahan*, 499 F.3d at 807 (holding that although the election was administered by local authorities, "the Secretary of State is 'the chief state election official responsible for overseeing of the voter registration process,' " so Eleventh Amendment immunity did not preclude the voting rights lawsuit against the Secretary of State).

15

At the start of this cause of action, Shannon County agreed to provide six days of early voting for the 2012 primary and general elections. Docket 1 ¶ 102. This means that residents of Shannon County, a county that is almost entirely comprised of Native Americans, either could vote early within Shannon County for six days or they had to travel between almost an hour and up to almost three hours (depending on the location of their residence) to Fall River County to exercise their right to vote. This was substantially different from the voting opportunities afforded to the residents of other counties in South Dakota and to the majority of white voters. Plaintiffs also alleged in the complaint the cost and time it would take for residents of Shannon County to exercise their right to vote in Fall River County. Docket 1 ¶ 63. Additionally, plaintiffs alleged that voting by mail is not a viable option for many tribal members because past discrimination and hostilities cause them to distrust that their vote will be counted when sent by mail. Docket 1 ¶ 64. Finally, plaintiffs alleged that early voting within Shannon County was not always offered in the past, but when it was, the early voting locations contributed to the voter turnout nearly doubling. Docket 1 ¶ 69.

Through these facts plaintiffs have sufficiently alleged that based on their race they "have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice." 42 U.S.C. § 1973(b); *see also Chisom*, 501 U.S. at 397. With the broad scope of the Voting Rights Act viewed in tandem with the facts alleged in the complaint and Gant's ability to run elections in emergencies as well as his control over HAVA funds, it is reasonable for the court to infer that Gant is a proper party

to be sued for the early voting shortcomings in Shannon County. *See Janis v. Nelson*, Civ. No. 09-5019, 2009 WL 5216902, at *7 (D.S.D. Dec. 30, 2009) ("In light of the broad scope of the Voting Rights Act and the facts set forth in the amended complaint and discussed above, it is reasonable to infer that state defendants may be liable for the alleged violations of Section 2 . . . of the Voting Rights Act because they are authorized to promulgate rules pertaining to numerous voting matters, including the uniformity of election procedures, voter file maintenance, and implementation of the NVRA.").

### B. Equal Protection

Plaintiffs claim that Gant violated the Fourteenth Amendment and 42 U.S.C. § 1983 when he acted under the color of state law to deprive voters of Shannon County equal protection of the laws by failing to establish early voting in Shannon County. Docket 1 ¶ 108. Section 1983 provides that:

> Every person, who under the color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the Jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall liable to the party injured.

42 U.S.C. § 1983. Thus, plaintiffs must show a set of facts whereby they have been deprived of a federal statutory right or a constitutional right under color of state law. 42 U.S.C. § 1983; *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980).

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This is a directive that all persons who are similarly situated should

be treated alike. *Plyler v. Doe*, 457 U.S. 202, 216 (1982). The Supreme Court has "treated as presumptively invidious those classifications that disadvantage a 'suspect class,' or that impinge upon the exercise of a 'fundamental right.'" *Id.* at 216-17. To show a violation of the Equal Protection Clause of the Fourteenth Amendment, however, the plaintiff must bring forth "[p]roof of racially discriminatory intent or purpose[.]" *Village of Arlington Heights v. Metro. Housing*, 429 U.S. 252, 265 (1977). "[A]n invidious discriminatory purpose may often be inferred from the totality of the relevant facts, including the fact, if it is true, that the law bears more heavily on one race than another." *Washington v. Davis*, 426 U.S. 229, 242 (1976).

Plaintiffs claim that Gant "either explicitly caused, encouraged, participated, or knowingly acquiesced in the violation of Plaintiffs' constitutional rights; at a minimum, he and others failed, and continue to fail to adopt an appropriate state plan for HAVA funds to address the needs of the poorer counties in the State of South Dakota." Docket 47 at 16. Plaintiffs have also alleged that white voters in most of the other South Dakota counties have access to in-person, early voting for the full statutory period while Native American residents of Shannon County do not have the same access during that time. This claim involves the fundamental right to vote and plaintiffs, as Native Americans, could be considered a suspect class. These factual allegations are enough to infer on a motion to dismiss from the totality of the facts that the law bears more heavily on one race than another. For that reason, Gant's motion to dismiss on the Equal Protection Clause claim is denied.

### C. South Dakota Constitution

Plaintiffs have argued that "[t]he defendants have acted under color of state law to deprive the voters of Shannon County equal elections by arbitrarily failing to establish early voting polling places within Shannon County for a full six (6) week period as enjoyed by almost every other registered voter in the State of South Dakota in violation of the Constitution of the State of South Dakota." Docket 1 ¶ 111.

Article VII, Section 1 of the South Dakota Constitution, provides that "[e]lections shall be free and equal, and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage." S.D. Const. art. VII, § 1. This claim tracks plaintiffs' Equal Protection Clause claim previously discussed and, because it provides a separate and independent right under South Dakota state law, it too must survive Gant's motion to dismiss.

For these reasons, plaintiffs have stated a claim upon which relief can be granted on their Voting Rights Act claim, their Equal Protection Clause claim, and their South Dakota Constitutional claim against Gant in his official capacity; therefore, his motion to dismiss is denied.

### CONCLUSION

Because the *Ex parte Young* exception to the doctrine of sovereign immunity applies in this case, Secretary of State Gant is not immune from suit under the Eleventh Amendment. Plaintiffs have established that they have standing against Gant because infringement upon their voting rights is a concrete injury that is linked to Gant's conduct and their harm could potentially be remedied or redressed by a favorable court ruling. And plaintiffs

have succeeded in stating a claim under Federal Rule of Procedure 12(b)(6) in regards to their Voting Rights Act claim, their Equal Protection Clause claim, and their claim under the South Dakota Constitution. Accordingly, it is

ORDERED that defendant Gant's motion to dismiss (Docket 43) is denied.

Dated September 27, 2012.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE