UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | | |
|---|---|---|
| CHRIS BROOKS, | ) | CIV. 12-5003-KES |
| FRANCIS RENCOUNTRE, | ) | |
| GLORIA RED EAGLE, | ) | |
| SHARON CONDEN, | ) | |
| JACQUELINE GARNIER, | ) | |
| JENNIFER RED OWL, | ) | |
| EDWINA WESTON, | ) | |
| MICHELLE WESTON, | ) | |
| MONETTE TWO EAGLE, | ) | ORDER DENYING DEFENDANTS' |
| MARK A. MESTETH, | ) | MOTION TO DISMISS AND |
| STACY TWO LANCE, | ) | GRANTING DEFENDANTS' MOTION |
| HARRY BROWN, | ) | TO EXTEND |
| ELEANOR WESTON, | ) | |
| DAWN BLACK BULL, | ) | |
| CLARICE MESTETH, | ) | |
| DONOVAN L. STEELE, | ) | |
| EILEEN JANIS, | ) | |
| LEONA LITTLE HAWK, | ) | |
| EVAN RENCOUNTRE, | ) | |
| CECIL LITTLE HAWK, SR., | ) | |
| LINDA RED CLOUD, | ) | |
| LORETTA LITTLE HAWK, | ) | |
| FAITH TWO EAGLE, | ) | |
| EDMOND MESTETH, and | ) | |
| ELMER KILLS BACK, JR., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JASON GANT, in his official capacity as | ) | |
| South Dakota Secretary of State, | ) | |
| SHANNON COUNTY, SOUTH DAKOTA, | ) | |
| FALL RIVER COUNTY, SOUTH DAKOTA, | ) | |
| SHANNON COUNTY BOARD OF | ) | |
| COMMISSIONERS, | ) | |
| FALL RIVER COUNTY BOARD OF | ) | |
| COMMISSIONERS, | ) | |
| JOE FALKENBUERG, in his official | ) | |
| capacity as a member of the County Board | ) | |
| of Commissioners for Fall River County, | ) | |
| South Dakota, | ) | |
| ANNE CASSENS, in her official capacity as | ) | |
| a member of the County Board of | ) | |
| Commissioners for Fall River County, | ) | |
| South Dakota, | ) | |
| MICHAEL P. ORTNER, in his official | ) | |
| capacity as a member of the County Board | ) | |

| | |
|---|---|
| of Commissioners for Fall River County, South Dakota, | ) )|
| DEB RUSSELL, in her official capacity as a member of the County Board of Commissioners for Fall River County, South Dakota, | ) ) ) ) )|
| JOE ALLEN, in his official capacity as a member of the County Board of Commissioners for Fall River County, South Dakota, | ) ) ) ) |
| BRYAN J. KEHN, in his official capacity as a member of the County Board of Commissioners for Shannon County, South Dakota, | ) ) ) ) )|
| DELORIS HAGMAN, in her official capacity as a member of the County Board of Commissioners for Shannon County, South Dakota, | ) ) ) ) )|
| EUGENIO B. WHITE HAWK, in his official capacity as a member of the County Board of Commissioners for Shannon County, South Dakota, | ) ) ) ) )|
| WENDELL YELLOW BULL, in his official capacity as a member of the County Board of Commissioners for Shannon County, South Dakota, | ) ) ) ) )|
| LYLA HUTCHISON, in her official capacity as a member of the County Board of Commissioners for Shannon County, South Dakota, | ) ) ) ) )|
| SUE GANJE, in her official capacity as the County Auditor for Shannon and Fall River Counties, and | ) ) ) )|
| JAMES SWORD, in his official capacity as Attorney for Shannon and Fall River Counties, | ) ) ) )|
| Defendants. | ) ) |

Plaintiffs brought this cause of action seeking declaratory relief and for a temporary and permanent injunction that would require defendants to provide the full period of statutorily authorized early voting within Shannon County. Docket 1. All defendants move to dismiss plaintiffs' motion for a permanent injunction as moot because they claim that plaintiffs' alleged harm has been

remedied by defendants' voluntary conduct and that no case or controversy remains. Docket 77. Plaintiffs contest that motion and assert that because defendants' agreement to provide early voting expires in 2019, and there is no guaranteed funding for early voting beyond 2018, their alleged harm is likely to recur and their request for declaratory and permanent injunctive relief is a live claim. Docket 81. Defendants also move to extend the discovery and other motions deadline. Docket 73. Plaintiffs resist this motion and claim defendants cannot show good cause. Docket 76. For the following reasons, defendants' motion to dismiss is denied, and defendants' motion to extend the scheduling order is granted.

## BACKGROUND

Plaintiffs are enrolled members of the Oglala Sioux Tribe who reside in Shannon County and are registered to vote. Docket 1 ¶¶ 10-34. Defendants are the entities or people responsible for conducting voting in Shannon County and Fall River County or who are related to voting in South Dakota. Shannon County is entirely within the boundaries of the Pine Ridge Indian Reservation. Docket 1 ¶ 1. Shannon County contracts for certain services, including conducting elections, through an adjacent county, Fall River County. Docket 1 ¶ 61.

What is called early voting is absentee voting that is done in person. Docket 1 ¶ 63. Most voters in South Dakota can exercise their right to vote prior to election day in the weeks leading up to election day at their county courthouse. Docket 1 ¶ 63. Shannon County does not have a courthouse. Its registered voters can vote early in person at the Fall River County courthouse.

In the past, Shannon County has offered some days of early voting at locations within Shannon County itself, but never for the full statutory time period. Docket 1 ¶ 63. In 2012, Shannon County planned to offer six days of early voting at a location within Shannon County, but any other early voting had to be done in Fall River County. Docket 1 ¶ 102. The auditor's office in Fall River County is located in Hot Springs, which is between 53 minutes and 2 hours and 45 minutes from voters in Shannon County depending on the residence of the voter. Docket 1 ¶ 63. The voters in the other counties in South Dakota are able to vote early, in person, at a location within their county, for the entire time period set by statute. Docket 1 ¶ 63.

On March 2, 2012, Shannon County determined that it would provide the full statutorily set window of early voting for each 2012 election. This decision was made in part due to the Secretary of State's commitment to provide an additional $12,000 through Help America Vote Act (HAVA) funds to reimburse Shannon County for the 8-hour-per-day wages for early voting election workers. Docket 56 at 3. On March 6, 2012, defendants filed a joint motion to dismiss plaintiffs' motion for preliminary relief on the grounds that it was moot because of defendants' voluntary conduct and because the requested relief had been granted. Docket 55.

On March 8, 2012, the court heard evidence and oral argument on the pending motions. Docket 64. Following that hearing, the court granted defendants' motion to dismiss plaintiffs' request for *preliminary* relief and denied plaintiffs' motion for a preliminary injunction as moot. Docket 66; *Brooks v. Gant*, Civ. No. 12-5003, 2012 WL 871262 (D.S.D. Mar. 14, 2012).

Plaintiffs' motion for a permanent injunction and request for declaratory relief continued, and the parties began discovery.

In the interim, defendants voluntarily agreed to provide early voting beyond the 2012 voting cycle within Shannon County. On August 3, 2012, Shannon County and Secretary of State Jason Gant entered into a Memorandum of Agreement (the agreement) whereby Gant agreed to release additional HAVA funds to Shannon County to allow the county to provide staff for early voting through January of 2019. Docket 79-1. On that same day, Shannon County passed two resolutions. The first, Resolution 2012-10, resolved for Shannon County to enter into the agreement. Docket 79-2. The second, Resolution 2012-11, acknowledged that Shannon County agreed to provide in-person, absentee voting at a satellite office in Shannon County for the full 46 days of early voting. The county also agreed to provide notice of such voting rights to the public through 2018. Docket 79-3. The agreement commenced on August 3, 2012, and it continues through January 1, 2019.[1]

Defendants moved to dismiss plaintiffs' request for permanent injunctive and declaratory relief on August 10, 2012. Docket 77. Defendants also moved to extend the deadline to disclose their expert and other motions because the

---

[1] The agreement provides that it:

is intended to assist Shannon County in funding federal elections, including absentee voting, in accordance with state and federal law and in compliance with and authorized by the State HAVA plan in effect and as amended from time to time and the Help America Vote Act of 2002 . . . as directed by the Secretary of State.

Docket 79-1 at 3.

amount of discovery and complexity of the case required additional time. Docket 73. Plaintiffs resist that motion and state that defendants have failed to show good cause and they will sustain prejudice if an extension is granted. Docket 76.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1)[2] provides that a court may dismiss an action for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). It is a rule " 'rooted in the unique nature of the jurisdictional question.' " *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). Under a motion to dismiss based on lack of subject matter jurisdiction, the defendant may challenge either the plaintiff's complaint on its face or based on the factual truthfulness of the claims. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993); *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). The plaintiff carries the burden of showing that jurisdiction exists. *V S Ltd. P'ship v. Dep't of Hous. & Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000) (citation omitted). "A motion to dismiss for lack of jurisdiction under rule 12(b)(1) which is limited to a facial attack on the pleadings is subject to the same standard as a motion brought

---

[2] A motion to dismiss based on lack of subject matter jurisdiction can be raised at any time under Federal Rule of Civil Procedure 12(h)(3). Regardless of whether defendants' motion to dismiss falls under Rule 12(b) or Rule 12(c), the standard of review is the same. *See Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990) (stating that the "distinction [between Rule 12(c) and 12(b)(6)] is purely formal, because we review this 12(c) motion under the standard that governs 12(b)(6) motions") (citations omitted).

under Rule 12(b)(6)." *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 698 (8th Cir. 2003) (citation omitted).

When reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court assumes that all facts in the complaint are true and construes any reasonable inferences from those facts in the light most favorable to the plaintiff. *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008). To decide the motion to dismiss under Rule 12(b)(6), the court may consider the complaint, some materials that are part of the public record, or materials embraced by the complaint. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). To survive the motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The factual content in the complaint must "allo[w] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Braden v. Wal-Mart Stores*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)).

## DISCUSSION

### I. Motion to Dismiss Based on Mootness

All defendants move to dismiss the complaint and plaintiff's motion for a permanent injunction because they claim that plaintiffs' claims have been rendered moot by defendants' voluntary conduct in establishing early voting in Shannon County. Plaintiffs respond that although plans have been made to ensure that early voting occurs in Shannon County through the 2018 election cycle, there is no guarantee that early voting will be offered after that election

year because the federal funds will have been wholly spent. Thus, defendants cannot establish that their voluntary conduct mooted the claim because they cannot show that it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.

"When a case . . . no longer presents an actual, ongoing case or controversy, the case is moot and the federal court no longer has jurisdiction to hear it." *Hickman v. Missouri*, 144 F.3d 1141, 1142 (8th Cir. 1998) (quotation and citation omitted); *see also Comfort Lake Ass'n, Inc. v. Dresel Contracting, Inc.*, 138 F.3d 351, 354 (8th Cir. 1998) ("The doctrine that federal courts may not decide moot cases 'derives from the requirement of Article III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy.' "). Such a requirement exists at all stages of the litigation and " 'applies with equal force to actions for declaratory judgment as it does to actions seeking traditional coercive relief.' " *Hickman*, 144 F.3d at 1142 (quoting *Marine Equip. Mgmt. Co. v. United States*, 4 F.3d 643, 646 (8th Cir. 1993)).

"The test for mootness is stringent. Mere voluntary cessation of allegedly illegal conduct does not moot a case; otherwise, the courts would be compelled to leave [t]he defendant . . . free to return to his old ways." *Ctr. for Special Needs Trust Admin., Inc. v. Olson*, 676 F.3d 688, 697 (8th Cir. 2012) (quotations and citations omitted). The test[3] for whether a defendant's voluntary action

---

[3] Defendants argue that the proper test for mootness in this case is the "capable of repetition, yet evading review test," which applies if "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the

moots the case or controversy requirement is that the defendant must prove it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Comfort Lake*, 138 F.3d at 355 (citing *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968)). "A mere 'physical or theoretical possibility' is insufficient" to show that something could not reasonably be expected to recur, and "a 'demonstrated probability' must be shown." *McFarlin*, 980 F.2d at 1211 (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)).

Shannon County has agreed to provide the full 46 days of early voting within the county for the next four election cycles through 2018. The Secretary of State has agreed to reimburse the county for the majority of those costs. What is unclear, however, is what will happen when the money runs out. Defendants have admitted that the expected costs to provide early voting through 2019 will drain the HAVA fund for Shannon County after the 2018 election cycle. At that point, it is likely that plaintiffs will again be faced with the same hurdles to early voting that existed at the start of this litigation because Shannon County lacks the funding to permanently support early voting. *See Strutton v. Meade*, 668 F.3d 549, 556 (8th Cir. 2012) (concluding that defendants could not show that the conditions were "not reasonably expected to recur" in light of "future budgetary and staffing restrictions.").

---

same complaining party would be subjected to the same action again." *McFarlin v. Newport Special Sch. Dist.*, 980 F.2d 1208, 1211 (8th Cir. 1992) (quotations and citations omitted). Because the conduct is voluntary, however, defendants have the burden of showing that it is clear that the improper behavior could not reasonably be expected to recur. *See Comfort Lake*, 138 F.3d at 355.

9

Additionally, in approximately seven years when the money shortage will recur, it is probable that there will be a new tribal government of the Oglala Sioux Tribe, a new Secretary of State, a new Shannon County Board of Commissioners, and a new Fall River County Board of Commissioners. There is no guarantee that the agreements reached in this case will be remade. *See Janis v. Nelson*, Civ. No. 09-5019, 2009 WL 4505935, at *6 (D.S.D. Nov. 24, 2009) (stating that although the auditor promised to keep plaintiffs' names on the voting list, she "could be removed from office in the future either by retirement or by being defeated during an election and her promise to not remove plaintiffs from the voting list would not be enforceable as to her successor.").

Moreover, even in the election years prior to 2019, there is still a possibility that early voting may not occur. The agreement between Shannon County and Gant is conditioned upon the continued availability of HAVA funding through the federal government and upon the government's delineation of the type of expenses for which HAVA funds may be used or how local governments may be reimbursed.[4] The conditional or terminative nature of the

---

[4] The termination provision provides that:

> This Agreement depends upon continued availability of HAVA funding for the purposes contemplated herein. This Agreement will be terminated if the Federal Government, through the Election Assistance Commission (EAC) or through appropriations or legislation under HAVA or otherwise, fails to appropriate sufficient funding or grant expenditure authority for the use of these funds as outlined in this agreement. It is also terminated should HAVA funds become unavailable for the purposes described herein for any reason. This Agreement also depends upon the continued

agreement coupled with the fact that all parties acknowledge that funding for early voting will likely run out in 2019, establishes that defendants cannot carry their burden and show that it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Concentrated Phosphate Export Ass'n*, 393 U.S. at 203.

Defendants cite numerous Eighth Circuit cases to support their argument that plaintiffs' issue has become moot as in a student who has graduated from high school or a plaintiff who has moved the court to create a team when the school had already voluntarily done so. Docket 90 at 15 (citing *McFarlin*, 980 F.2d at 1210; *Grandson v. Univ. of Minn.*, 272 F.3d 568, 574 (8th Cir. 2001)). The cases are distinguishable because unlike the harms alleged in those cases, the alleged harm of lack of early voting would still affect *these plaintiffs* directly in the future. This is not a case where plaintiffs would lack standing, lack an ongoing harm, or where a court can no longer grant effective relief like the cases cited above. While defendants have voluntarily given the requested relief for the next few voting cycles, there is no accounting for what will happen after 2018. For that reason, the harm is likely to recur once the HAVA money runs out.

Defendants also argue that plaintiffs cannot establish that they have a continued interest in the litigation because none of the plaintiffs utilized the

---

> availability of appropriated funds and expenditure authority from Shannon County for these purposes.

Docket 79-1 at 2.

early voting locations within Shannon County in the June primary election.[5] Defendants cite two cases to support their argument that plaintiffs' harm is not real and immediate because defendants provided the relief requested and plaintiffs failed to participate in early voting; therefore, they have forfeited their personal stake in the litigation. The cases cited, however, do not pertain to voting and are not applicable to these facts.[6] Plaintiffs requested early voting to have the option to vote early like the majority of other voters in South Dakota counties. One of the main benefits of early absentee voting is to vote whenever it is convenient for each voter. Plaintiffs are not required to vote early or face the threat of losing that right; rather, each voter is given the opportunity to make his/her voting decision based on what is best for him/her as an individual.

For these reasons, defendants have failed to carry their burden of persuading the court that their voluntary conduct has rendered the alleged

---

[5] Defendants claim that only three plaintiffs even voted, and none of the plaintiffs voted early and in person. Docket 90 at 18.

[6] In *Fischbach v. New Mexico Activities Association*, 38 F.3d 1159, 1160 (10th Cir. 1994), the Tenth Circuit Court of Appeals noted that case law in that circuit suggested that a case is moot if the litigant "graduates from school or no longer has an interest in participating in interscholastic athletic activity[.]" Although plaintiffs did not exercise their right to vote early in this election, they have indicated that they still have an active interest in participating in early voting in the future. It is their choice on when and if they decide to exercise their right to vote early. Their claim is not waived merely because they choose to vote on election day or do not vote early. Additionally, in *Chase v. Baskersville*, 508 F. Supp. 2d 492, 508 (E.D. Va. 2007), the court found that the claim was moot because the litigant in that case never indicated that he wanted to reenroll in a program to which he was denied access. That is not applicable to this case where plaintiffs have expressed a continued desire to have the option to vote early like the majority of other voters in South Dakota.

harm reasonably unlikely to recur, and the court cannot conclude that the challenged practice in this case has been rendered moot. *See Strutton*, 668 F.3d at 556 ("Mere voluntary cessation of a challenged action does not moot a case. Rather, a case becomes moot 'if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.' The burden of showing that the challenged conduct is unlikely to recur rests on the party asserting mootness.") (citation omitted). At this stage of the litigation, the court has a live case or controversy over both the request for declaratory and permanent injunctive relief, and the court retains subject matter jurisdiction over the case.

## II.     Motion to Extend the Scheduling Order

Defendants move to amend the court's current scheduling order and request that the deadlines be extended for discovery, including expert discovery and other motions, because discovery has been substantial, defendants' attorney was out of the office for a considerable amount of time, and defendants need more time to find and prepare an expert. Docket 73. Plaintiffs resist this motion and claim that defendants cannot show good cause for an extension and the motion should be denied. Docket 76.

Federal Rule of Civil Procedure 16 requires that the district court enter a scheduling order that sets the deadlines for the various stages of litigation. Under Rule 16(b)(4), "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). " 'The primary measure of good cause is the movant's diligence in attempting to meet the [scheduling] order's requirements.' " *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716-17

13

(8th Cir. 2008) (citations omitted). The amount of " 'prejudice to the party opposing the modification' and other factors may also affect the decision." *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001) (citation omitted). Rule 16 is to be interpreted in a way that achieves "the just, speedy, and inexpensive determination of every action[.]" Fed. R. Civ. P. 1.

    Defendants claim that the good cause in this case is that substantial discovery has occurred in a short window of time. Defendants note that multiple sets of requests for admission, multiple sets of interrogatories, requests for production of documents, as well as four depositions have delayed the proceedings. Docket 74 at 2-3. Defendants state that counsel for defendants was out of the office for a number of weeks due to a child's illness and participation in a pageant.

    Although the requested extension would delay the litigation to some degree, the court finds that under the circumstances of this case, good cause has been shown. The discovery has been substantial and conducted within a small window of time. This case involves issues of fundamental rights, and expert opinions are an important addition to the discussion. Moreover, a trial date has yet to be set, and plaintiffs have not sufficiently argued any prejudice or harm that they would incur from an extension other than distrust in the system in general. For all these reasons, the court will grant an extension to the discovery deadlines.

## CONCLUSION

Even though defendants voluntarily agreed to provide early voting in Shannon County through 2018, plaintiffs' claims are not moot because defendants cannot establish that it is unlikely that the wrongful conduct will not recur in the future. The court also finds that defendants have established good cause to extend the scheduling order. Accordingly, it is

ORDERED that defendants' motion to dismiss (Docket 77) is denied.

IT IS FURTHER ORDERED that defendants' motion to extend deadlines (Docket 73) is granted. All discovery, including expert discovery, will be commenced in time to be completed by **November 30, 2012**. The identity of and reports from retained experts under Rule 26(a)(2) will be due from defendants by **October 31, 2012**. All motions, other than motions in limine, together with supporting briefs, will be filed and served on or before **December 31, 2012.**

Dated October 4, 2012.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE