UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| CHRIS BROOKS, <br> FRANCIS RENCOUNTRE, <br> GLORIA RED EAGLE, <br> SHARON CONDEN, <br> JACQUELINE GARNIER, <br> JENNIFER RED OWL, <br> EDWINA WESTON, <br> MICHELLE WESTON, <br> MONETTE TWO EAGLE, <br> MARK A. MESTETH, <br> STACY TWO LANCE, <br> HARRY BROWN, <br> ELEANOR WESTON, <br> DAWN BLACK BULL, <br> CLARICE MESTETH, <br> DONOVAN L. STEELE, <br> EILEEN JANIS, <br> LEONA LITTLE HAWK, <br> EVAN RENCOUNTRE, <br> CECIL LITTLE HAWK, SR., <br> LINDA RED CLOUD, <br> LORETTA LITTLE HAWK, <br> FAITH TWO EAGLE, <br> EDMOND MESTETH, and <br> ELMER KILLS BACK, JR., <br><br> Plaintiffs, <br><br> vs. <br><br> JASON GANT, in his official capacity as South Dakota Secretary of State, <br> SHANNON COUNTY, SOUTH DAKOTA, <br> FALL RIVER COUNTY, SOUTH DAKOTA, <br> SHANNON COUNTY BOARD OF COMMISSIONERS, <br> FALL RIVER COUNTY BOARD OF COMMISSIONERS, <br> JOE FALKENBUERG, in his official capacity as a member of the County Board of Commissioners for Fall River County, South Dakota, <br> ANNE CASSENS, in her official capacity as a member of the County Board of Commissioners for Fall River County, South Dakota, <br> MICHAEL P. ORTNER, in his official capacity as a member of the County Board | CIV. 12-5003-KES <br><br><br><br><br><br><br> MEMORANDUM OPINION AND <br> ORDER GRANTING DEFENDANTS' <br> MOTION TO DISMISS WITHOUT <br> PREJUDICE |

of Commissioners for Fall River County, )
South Dakota, )
DEB RUSSELL, in her official capacity as a )
member of the County Board of )
Commissioners for Fall River County, )
South Dakota, )
JOE ALLEN, in his official capacity as a )
member of the County Board of )
Commissioners for Fall River County, )
South Dakota, )
BRYAN J. KEHN, in his official capacity as a )
member of the County Board of )
Commissioners for Shannon )
County, South Dakota, )
DELORIS HAGMAN, in her official capacity )
as a member of the County Board of )
Commissioners for Shannon )
County, South Dakota, )
EUGENIO B. WHITE HAWK, in his official )
capacity as a member of the County Board of )
Commissioners for Shannon County, South )
Dakota, )
WENDELL YELLOW BULL, in his official )
capacity as a member of the County Board of )
Commissioners for Shannon County, South )
Dakota, )
LYLA HUTCHISON, in her official capacity as )
a member of the County Board of )
Commissioners for Shannon )
County, South Dakota, )
SUE GANJE, in her official capacity as the )
County Auditor for Shannon and Fall River )
Counties, and )
JAMES SWORD, in his official )
capacity as Attorney for Shannon and Fall )
River Counties, )
                                                                             )
        Defendants. )

Plaintiffs brought this cause of action seeking declaratory relief and for a temporary and permanent injunction that would require defendants to provide the full period of statutorily authorized early voting within Shannon County. Docket 1. All defendants move to dismiss plaintiffs' complaint based on ripeness grounds because plaintiffs' alleged harm is not certain or imminent,

2

and thus, defendants argue the court does not have subject matter jurisdiction to adjudicate the cause of action. Docket 118. Plaintiffs contest the motion and assert that the action is ripe because their harm is certain to occur again. Docket 129. The parties also cross move for summary judgment, move to strike expert reports, and move in limine to prevent these experts from testifying at trial. For all the reasons discussed below, the motion to dismiss is granted. All other motions are denied as moot.

## BACKGROUND

Plaintiffs are enrolled members of the Oglala Sioux Tribe who reside in Shannon County and are registered to vote. Defendants are the entities or people responsible for conducting voting in Shannon County and Fall River County or who have a role related to voting in South Dakota. Shannon County is entirely within the boundaries of the Pine Ridge Indian Reservation. Due to the makeup of the population of Shannon County, it lacks the funds to provide certain services, features, and benefits that are typically provided to residents by the county in which they live. Thus, Shannon County must contract with an adjacent county to provide these services to its residents. Historically, Shannon County has contracted with Fall River County to provide election services.

SDCL 12-16-1 was amended in 2011 by the South Dakota Legislature to provide as follows: "Absentee voting shall begin no earlier and no later than forty-six days prior to the election." What is called early voting for the purpose of this lawsuit is more accurately described as absentee voting that is done in person. Most voters in South Dakota can exercise their right to vote prior to election day in the 46 days prior to election day at their county courthouse.

Because Shannon County does not have a courthouse within the county, its registered voters must vote early in person at the Fall River County courthouse in Hot Springs, South Dakota. Prior to the 2012 election cycle, access to early voting at a location within the borders of Shannon County was minimal. Before this lawsuit was filed, the Shannon County Board of Commissioners planned to offer only six days of early voting at a location within Shannon County. Any other early voting by Shannon County voters had to be done in Fall River County.

Plaintiffs brought this claim on January 13, 2012, because plaintiffs alleged they would have to travel between 53 minutes and 2 hours and 45 minutes from locations in Shannon County to Hot Springs, which is the county seat of Fall River County, to exercise their right to vote. Plaintiffs claimed that this burden upon their right to vote violated the Voting Rights Act, the Indian Citizenship Act, their right to equal protection of the law, and the South Dakota Constitution. Plaintiffs asked the court to grant a preliminary injunction that would force Shannon County to provide early voting for the full statutory period of 46 days at a location within the borders of Shannon County. Plaintiffs also requested permanent injunctive relief and a declaratory judgment proclaiming that defendants' conduct violated both the law and plaintiffs' rights.

Prior to the court's hearing on plaintiffs' motion for a preliminary injunction, defendants attempted to voluntarily abide by plaintiffs' request to provide the full 46 days of early voting in Shannon County for the primary and general elections in 2012. This decision was made in part due to the Secretary of State Jason Gant's commitment to provide an additional $12,000 through

Help America Vote Act (HAVA) funds, which would reimburse Shannon County for the 8-hour-per-day wages for the early voting election workers from Fall River County who would operate the voting station in Shannon County. Because of this voluntary conduct, defendants filed a joint motion to dismiss plaintiffs' motion for preliminary relief on March 6, 2012, claiming the motion was moot because the requested relief had been given. Docket 55.

On March 8, 2012, the court heard evidence and oral argument on the pending motions. Docket 64. Following the hearing, the court granted defendants' motion to dismiss plaintiffs' request for *preliminary* relief and denied as moot plaintiffs' motion for a preliminary injunction. Docket 66; *Brooks v. Gant*, Civ. No. 12-5003, 2012 WL 871262 (D.S.D. Mar. 14, 2012). Plaintiffs' motion for a permanent injunction and request for declaratory relief continued, and the parties began discovery.

In the interim, defendants voluntarily agreed to provide early voting beyond the 2012 voting cycle within Shannon County. On August 3, 2012, Shannon County and Secretary of State Gant entered into a Memorandum of Agreement (the agreement) whereby Secretary of State Gant agreed to release additional HAVA funds to Shannon County to allow the county to provide staff for early voting at a location within Shannon County through January of 2019. Docket 79-1. On that same day, Shannon County passed two resolutions. The first, Resolution 2012-10, resolved for Shannon County to enter into the agreement. Docket 79-2. The second, Resolution 2012-11, acknowledged that Shannon County agreed to provide in-person, absentee voting at a satellite office in Shannon County for the full 46 days of early voting. The county also

agreed to provide notice of such voting rights to the public through 2018. Docket 79-3.

The agreement commenced on August 3, 2012, and it continues through January 1, 2019. The agreement provides that it:

> is intended to assist Shannon County in funding federal elections, including absentee voting, in accordance with state and federal law and in compliance with and authorized by the State HAVA plan in effect and as amended from time to time and the Help America Vote Act of 2002 . . . as directed by the Secretary of State.

Docket 79-1 at 3. It is undisputed that the Secretary of State would transfer up to $111,000 to Shannon County, which would bring its total HAVA account balance to $179,910.78. It is undisputed that this amount generally is sufficient to fund the four election cycles of 2012, 2014, 2016, and 2018.

On August 10, 2012, defendants moved to dismiss plaintiffs' request for permanent injunctive and declaratory relief. Docket 77. Defendants contended plaintiffs' claims were moot based on defendants' voluntary cessation of the contested conduct. The court denied defendants' motion and concluded because the voting agreements and funding only extended through the 2018 voting cycle, plaintiffs' harm was likely to recur. Docket 106. Secretary of State Gant also moved to dismiss himself as a party based on arguments of standing, sovereign immunity, and other claims. The court denied the motion. Docket 95.

Now defendants move to dismiss based on a different Article III analysis—ripeness—because they claim that plaintiffs' proposed harm is too uncertain or distant for the court to maintain its subject matter jurisdiction.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(1) provides that a court may dismiss an action for lack of subject matter jurisdiction. It is a rule " 'rooted in the unique nature of the jurisdictional question.' " *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). Under a motion to dismiss based on lack of subject matter jurisdiction, the defendant may challenge either the plaintiff's complaint on its face or based on the factual truthfulness of the claims. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993); *Osborn*, 918 F.2d at 729 n.6. A motion to dismiss based on lack of subject matter jurisdiction can be raised at any time under Federal Rule of Civil Procedure 12(h)(3). And if at any time the court concludes that "it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). "Ripeness is peculiarly a question of timing and is governed by the situation at the time of review, rather than the situation at the time of the events under review." *Iowa League of Cities v. E.P.A.*, 711 F.3d 844, 867 (8th Cir. 2013) (quotations and citation omitted).

The plaintiff carries the burden of showing that jurisdiction exists. *V S Ltd. P'ship v. Dep't of Hous. & Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000) (citation omitted). Under a 12(b)(1) motion "the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction–its very power to hear the case–there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Osborn*, 918 F.2d at 730. Accordingly, the existence of disputed material facts

does not prevent the trial court from analyzing the merits of the jurisdictional claims, and no presumptive truthfulness must attach to the facts alleged in the complaint. *Id.*

**DISCUSSION**

Defendants argue that dismissal is required because there is no case or controversy that is ripe for the court to adjudicate when any potential injury to plaintiffs is speculative, uncertain, and not imminent. Plaintiffs respond that although plans have been made to ensure that early voting occurs in Shannon County through the 2018 election cycle, there is no guarantee that early voting will be offered after that election year, thus their harm is certain to occur and the injury would be severe as it infringes upon their right to vote.

Because federal courts are courts of limited jurisdiction, they only have the ability to hear cases that are authorized by Article III of the Constitution or under the statutes that are duly enacted by Congress. *Gray v. City of Valley Park, Mo.*, 567 F.3d 976, 982-83 (8th Cir. 2009) (citations omitted). Under Article III there must be a case or controversy at every stage of the litigation, which requires " 'a definite and concrete controversy involving adverse legal interests[.]' " *Id.* at 983 (quoting *McFarlin v. Newport Spec. Sch. Dist.*, 980 F.2d 1208, 1210 (8th Cir. 1992)). " 'Federal courts must always satisfy themselves that this requirement has been met before reaching the merits of a case.' " *Id.* (quoting *Schanou v. Lancaster Cnty. Sch. Dist. No. 160*, 62 F.3d 1040, 1042 (8th Cir. 1995)). This requirement, also known as a matter's justiciability, is typically tested by three doctrines: ripeness, mootness, and standing. *Id.*

Ripeness is an issue of subject matter jurisdiction. *Dakota, Minn. & E. R.R. Corp. v. South Dakota*, 362 F.3d 512, 520 (8th Cir. 2004) (citation omitted). The Eighth Circuit Court of Appeals has stated the basic rationale behind the ripeness doctrine " 'is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.' " *Pub. Water Supply Dist. No. 10 v. City of Peculiar, Mo.*, 345 F.3d 570, 572-73 (8th Cir. 2003) (quoting *Abbott Labs v. Gardner*, 367 U.S. 136, 148 (1967)). Courts also must ask if "a dispute has yet matured to a point that warrants decision[,]" because "[t]he central concern is whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." 13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3532 at 365 (3d. ed. 2008) (hereafter Wright & Miller). Thus, the ripeness test involves an analysis of both " 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.' " *Pub. Water Supply*, 345 F.3d at 572-73. The party seeking to invoke jurisdiction must satisfy each prong to a minimal degree. *Id.* (citation omitted).

### A. Fitness

This prong of the ripeness determination analyzes the court's ability to visit a specific issue. *Pub. Water Supply*, 345 F.3d at 573. Typically, whether a case is fit for review depends on if the case would benefit from additional factual development. *Id.* (citations omitted). "The case is more likely to be ripe if it poses a purely legal question and is not contingent on future possibilities." *Id.* (citation omitted).

9

As the court noted in a prior order related to mootness, the future is uncertain for voters in Shannon County following the 2018 election cycle. Even so, this is the type of case that would benefit from the development of additional facts because the landscape of both the facts and the law are subject to immense change. It is impossible for the court to address the alleged harm now when the court is unsure as to what election laws will be in place in 2020, what funding will be available for early voting and from what sources, whether permanent donated space will be available in the new Pine Ridge Justice Center to house in-person voting, whether Shannon County will change its home rule charter to appoint or elect its own auditor, whether Shannon County will be contracting with Fall River County for essential services related to voting, and the future makeup of the Board of Commissioners for both Shannon County and Fall River County. The court can neither proceed based solely on defendants' past wrongs nor guess at the state of affairs as they will exist in 2019 and beyond. For the court to adjudicate this claim now would amount to an advisory opinion based on assumptions and speculation. *See KCCP Trust v. City of North Kansas City*, 432 F.3d 897, 899 (8th Cir. 2005) ("One kind of advisory opinion is an opinion advising what the law would be upon a hypothetical state of facts.").

Moreover, South Dakota voting laws have changed recently.[1] South Dakota voting laws may continue to change, which would drastically affect both the scope of this claim and the appropriate parties to it. Other states have

---

[1] For example, in 2003 the South Dakota Legislature added a requirement for voters to provide photo identification before voting. SDCL 12-18-6.1.

limited absentee voting, require voting by mail only, or mandate excuse-required absentee voting. South Dakota may adopt some of these changes in the future. The South Dakota Secretary of State will change because of term limits, and the new Secretary of State may disburse HAVA funds more or less generously than the current Secretary of State. Federal HAVA laws may change. Many variables are at play here, and for the court to attempt to guess at not only the factual changes that may occur but also the minds of the South Dakota Legislature and other elected officials is an insurmountable task at this stage of the litigation. *See* 13B Wright & Miller § 3532.3 at 494 ("The need for more precise development to frame constitutional issues may arise with respect to state law as well as to facts."). Plaintiffs have not met their burden to establish that the issue is currently fit for judicial decision.

    **B.**    **Hardship to the Parties**

The hardship to the parties prong is equally unavailing to persuade the court that subject matter jurisdiction exists here. To determine hardship to the parties "abstract injury is not enough. It must be alleged that the plaintiff has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged statute or official conduct." *Pub. Water Supply*, 345 F.3d at 573 (quotations and citations omitted). This hardship factor assesses the potential harm suffered, either financial or due to uncertainty-induced behavior in the absence of adjudication. *Id.* Plaintiffs do not have to wait until the injury occurs, but the injury should be certainly impending. *Iowa League of Cities v. E.P.A.*, 711 F.3d 844, 867 (8th Cir. 2013). The court considers both the size of the alleged harm and its immediacy when determining hardship. *Id.*

Plaintiffs argue that their harm is immediate, direct, and certain. Plaintiffs first allege that their harm is both immediate and direct because certain rights like voting, which are fundamental rights afforded to all citizens, must be carefully guarded. The court agrees with this argument in theory, because voting traditionally has been more protected[2] than some rights, but not in practice. Plaintiffs have admitted their alleged injury will not occur until after the 2018 voting cycle concludes and HAVA funds have been exhausted. While the eventual harm could be severe if the events unfold as plaintiffs predict they will in 2019, the immediacy consideration is nonexistent here. *See Emp'rs Ass'n, Inc. v. United Steelworkers of Am.*, 32 F.3d 1297, 1299 (8th Cir. 1994) ("Ripeness is demonstrated by a showing that a live controversy exists such that the plaintiffs will sustain *immediate* injury from the operation of the challenged provisions, and that the injury would be redressed by the relief requested.") (emphasis added). There is no evidence that plaintiffs are immediately in danger of sustaining injury to their voting rights, and the type or degree of the harm does not surmount the immediacy consideration in this case.

Plaintiffs contend that their harm is certain by citing to this court's prior order denying defendants' motion to dismiss based on mootness for the proposition that plaintiffs' harm is certain to recur. Plaintiff did not acknowledge, however, that the court's tests for mootness and ripeness are different. *See* 13B Wright & Miller § 3532.1 at 383 ("As compared to mootness,

---

[2] *See* 13B Wright & Miller § 3532.3 at 494 ("The assessment of hardship may be complicated, however, by the fact that some rights are more jealously protected than others.").

which asks whether there is anything left for the court to do, ripeness asks whether there yet is any need for the court to act."). The court previously determined that plaintiffs' claims were not moot because "it is likely" that HAVA funds will run out in 2019 and "plaintiffs will again be faced with the same hurdles to early voting that existed at the start of this litigation because Shannon County lacks the funding to permanently support early voting." Docket 106 at 9. Here, while there may be something left for the court to do, the court does not yet need to act because plaintiffs' alleged harm is not *certain* to occur now or in 2019. The court previously found that harm was only *likely* to recur. This is a distinction that makes a difference.

The court finds plaintiffs' permanent injunction request is not ripe for the aforementioned reasons. The court will not permanently enjoin conduct of state actors when the factual record is undeveloped, state and federal law could dramatically change, and there is not substantial proof of impending and certain harm. Declaratory relief is equally unripe at this time because the Declaratory Judgment Act does not provide a vehicle to skirt issues of ripeness and this claim has not met the requirements set by Article III. *See Pub. Water Supply*, 345 F.3d at 572 ("The Declaratory Judgment Act did not extend federal court jurisdiction beyond the recognized boundaries of justiciability, but only 'enlarged the range of remedies available.' ").

It is plaintiffs' burden to provide facts that satisfy the court that it has the necessary subject matter jurisdiction to adjudicate the case before it. Plaintiffs fail to carry their jurisdictional burden by establishing that their

claim is fit for adjudication and that they will suffer substantial hardship through injury that is imminent, direct, and certain. Dismissal is appropriate.

## CONCLUSION

At this time plaintiffs' alleged injuries are too speculative for the court to make a judicial determination on the merits. Therefore, the issues are not ripe for adjudication, and the court does not have subject matter jurisdiction to continue. Accordingly, it is

ORDERED that defendants' motion to dismiss without prejudice (Docket 118) is granted.

IT IS FURTHER ORDERED that plaintiffs' motion for summary judgment (Docket 91) is denied as moot.

IT IS FURTHER ORDERED that defendant Secretary of State Gant's motion for summary judgment (Docket 96) is denied as moot.

IT IS FURTHER ORDERED that Fall River County defendants' motion for summary judgment (Docket 97) is denied as moot.

IT IS FURTHER ORDERED that defendants' motion for summary judgment (Docket 100) is denied as moot.

IT IS FURTHER ORDERED that defendants' motion to strike plaintiffs' statement of undisputed material facts (Docket 113) is denied as moot.

IT IS FURTHER ORDERED that plaintiffs' motion to strike defendants' expert report and motion to exclude the testimony of Dr. Thomas L. Brunell (Docket 140) is denied as moot.

IT IS FURTHER ORDERED that defendants' motion in limine to preclude the testimony and report of plaintiffs' expert Richard Braunstein, Ph.D. (Docket 147) is denied as moot.

IT IS FURTHER ORDERED that defendant Secretary of State Gant's motion for joinder (Docket 152) is denied as moot.

Dated August 6, 2013.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE